STATE OF IOWA, appellee, v. RONALD GRAMENZ, appellant.

No. 51111.

(Reported in 126 N.W.2d 285)

FEBRUARY 11, 1964.

Arthur H. Johnson and Edward J. Flattery, both of Fort Dodge, for appellant.

Evan Hultman, Attorney General, and John H. Allen, Assistant Attorney General, of Des Moines, and Mark McCormick and Francis E. Tierney, both of Fort Dodge, for appellee.

STUART, J.—Ronald Gramenz was convicted of second-degree murder in connection with the fatal shooting of Richard Hoeppner, who had been keeping company with his estranged wife. We need not detail the facts as defendant concedes there was sufficient evidence to support the verdict of the jury. Defendant's assigned errors relate to the court's instructions, rulings upon evidence and offers of proof and the severity of the sentence.

I. Defendant did not urge insanity as a defense, but introduced testimony of a clinical psychologist and a psychiatrist relating to his mental condition. R. L. Flenniken, chief clinical psychologist at Cherokee Mental Health Institute, found defendant to be in a state of severe emotional turmoil and testified:

"I simply do not think that he is capable of coming to any premeditated decision about hardly anything. It is just not characteristic for this man's way of responding. He is so much pushed this way and that way by his feelings at the moment, which are constantly a conflicting turmoil and a flipping back and forth like I said, I just don't see how this person can come to any decision and stick to it for any length of time."

He defined premeditation as a thought-out plan involving thinking and rational thought processes in which planning and thinking it out in a logical, systematic sort of way is a necessary part. He concluded that defendant "is not able to come to any thoughtful decision about the matter whatsoever."

Dr. Emil P. Eckart, a psychiatrist associated with Kersten Clinic in Fort Dodge, also found intense emotional turmoil in defendant. He testified: "Premeditation, as I understand it, is

meditation and thoughtful planning for an act. In my opinion, this man did not have premeditation in connection with this act."

He found no evidence of disassociation from reality. On cross-examination he said:

"Q. (By Mr. McCormick) You think that if he did shoot Richard Hoeppner, that he did so thinking he was resolving this turmoil?

"A. I don't believe, in my opinion, I don't think so. I can't say that it was his purpose to shoot Richard Hoeppner. We all have conscious and unconscious motivations. The defendant is not psychotic. I did find mental incapacity, in using the intellectual process. This was because of the emotional turmoil and workings of his mind. At the time of his examination, I think he knew what he was doing.

"Meditation requires thoughtful planning. Because of my knowledge of Mr. Gramenz's personality and psychodynamics, in my opinion, premeditation did not exist."

The trial court in its instructions restricted the jury's consideration of this testimony to the following issues:

"1. Whether defendant acted upon the occasion charged willfully, deliberately, and premeditatedly, in connection with the State's charge of first-degree murder;

"2. Whether, if you find defendant guilty of first-degree murder, he shall die or be imprisoned for life; and

"3. Whether defendant's alleged written statement was voluntary."

Defendant was not satisfied with this instruction and takes the "position that he was not mentally capable of committing either first-degree or second-degree murder and if the jury had been properly instructed the verdict would have been manslaughter or possibly an acquittal.

"Defendant feels that the court did not give him the full benefit of the doctrine of diminished responsibility and the jury was not told or instructed that they might consider his mental condition on the elements of specific intent to kill, malice aforethought and general criminal intent (mens rea)."

Most of the authorities cited by defendant relate to mental

disorders which justify an acquittal on a plea of insanity for lack of criminal responsibility. He continues the century-old debate over the propriety of the M'Naghten rules requiring the mental illness to be such that it destroys the defendant's power rationally to comprehend the nature or consequences of the act which constitutes the criminal charge against him. He espouses the cause of "irresistible impulse" and the New Hampshire rule revitalized in 1954 by the Court of Appeals for the District of Columbia in Durham v. United States, 94 App. D. C. 228, 214 F.2d 862, 45 A. L. R.2d 1430, which held that an accused is not criminally responsible if his unlawful act is the product of mental disease or mental defect. As defendant did not plead insanity, a detailed discussion of these authorities is not in order. It is sufficient to say the opinions of psychiatrists on the M'Naghten rules vary from that of Dr. Gregory Zilboorg, who claims it forces a psychiatrist to violate both his Hippocratic Oath and his oath to tell the truth as a witness, to that of Dr. Fredric Wertham, who experiences no difficulty in expressing his medical opinion in response to questions propounded under these rules. In spite of the recognized scientific deficiencies in the M'Naghten rules exposed by the advancements in the field of psychiatry in the last twenty-five or thirty years, legal scholars and psychiatrists are far from unanimous in presenting a more practical approach which will offer better protection to society and greater safeguards for the rights of the individual. The courts have been reluctant to depart from the right and wrong test in view of this uncertainty. See 22 Chicago Law Review 317, 404; Perkins on Criminal Law 738, 776; Psychiatry and the law, Guttmacher and Weihofen, pages 380 to 452, and its review in 38 Iowa Law Review 687.

We are committed to the M'Naghten rules or the "right and wrong" test and have rejected the "irresistible impulse" modification except when it so operates upon a diseased mind as to destroy the comprehension of consequences. State v. Beckwith, 242 Iowa 228, 46 N.W.2d 20; State v. Hodge, 252 Iowa 449, 465, 105 N.W.2d 613.

We have not heretofore considered the theory of diminished responsibility. It is not dependent upon a plea of

insanity, but permits proof of defendant's mental condition on the issue of his capacity to form a specific intent in those instances in which the State must prove defendant's specific intent as an element of the crime charged. Perkins on Criminal Law 767–771; Volume 8 Am. Jur., Proof of Facts, 35, 36; Weihofen, Mental Disorder as a Criminal Defense, 182. The trial court instructed upon this doctrine when it permitted the jury to consider testimony relating to defendant's mental and emotional condition in connection with the charge of first-degree murder. It allowed the jury to consider such evidence in deciding whether the defendant acted "willfully, deliberately and premeditatedly." Defendant took exception to the instruction because it did not permit the jury to consider his mental and emotional condition on the elements of malice aforethought and general criminal intent.

The State urges us to follow those jurisdictions which have rejected the doctrine of diminished responsibility citing Fox v. State, 73 Nev. 241, 316 P.2d 924, 928; Commonwealth v. Hollinger, 190 Pa. 155, 160, 42 A. 548, 549; Foster v. State, 37 Ariz. 281, 294 P. 268; State v. Van Vlack, 57 Idaho 316, 65 P.2d 736; Commonwealth v. Cooper, 219 Mass. 1, 106 N.E. 545; State v. Holloway, 156 Mo. 222, 56 S.W. 734; State v. Maioni, 78 N. J. L. 339, 74 A. 526, 20 Ann. Cas. 204.

Most of the opinions were handed down about the turn of the century and only Fox v. State (1957), 73 Nev. 241, 243, 316 P.2d 924, 925, was written during the last 25 years. The Nevada court specifically rejected the doctrine of partial responsibility and approved the trial court's action in refusing to give a requested instruction stating in part that " 'the evidence of insanity may be considered by you on the issues of malice, premeditation, deliberation and intent, and may reduce the grade of the offense charged.' " However, it recognized that evidence of mental disorder "with all other material evidence" may be considered by the jury in determining defendant's state of mind at the time of the homicide. Fox v. State, supra, at page 246 of 73 Nev., page 927 of 316 P.2d. Nevada rejected the evidence on the question of the "capacity" of the defendant to premeditate

but indicated it would accept it on the issue of whether "he did in fact premeditate."

While we are not satisfied that such distinction is necessary or proper, the trial court's instruction here did what the Nevada court indicates it would have done. It allowed the jury to consider this evidence on the issue of defendant's willfullness, premeditation and deliberation and then instructed the jury "* * * if upon consideration of all the evidence in the case, including this evidence, you have a reasonable doubt that defendant acted upon the occasion charged, willfully, deliberately and premeditatedly, then you cannot find defendant guilty of first-degree murder."

We believe that failure to recognize there can be an unsoundness of mind of such a character as to negative a specific intent to commit a particular crime is to ignore the great advancements which have been made in the field of psychiatry. The results which have been achieved confirm its growing reliability. We do not consider this position contradictory to our adherence to the right and wrong test of insanity. We do not pretend there are no mental disorders except those which qualify under this test, but rather limit the defense of insanity to the types of mental illness in which the defendant cannot comprehend the nature or consequences of his act. Weihofen in his text Mental Disorder as a Criminal Defense states that if we recognize the basic principle that a person should not be punished for a crime if he did not entertain the requisite state of mind, "there is no logical escape from the proposition that a person cannot be held guilty of a deliberate and premeditated killing when he did not deliberate and premeditate, and indeed was incapable of deliberating and premeditating. If, however, he was able to understand the nature of the act he was committing and if he intended to do that act, he should be held guilty of murder in the second degree or manslaughter. There is no logic in the 'all or nothing' assumption underlying so many court opinions on the subject—that a person is either 'sane' and wholly responsible for all his acts, or 'insane' and wholly irresponsible."

It is interesting to note that California, which also approves

the right and wrong test for legal insanity and has rejected the theory of irresistible impulse, has approved of the theory of diminished responsibility. In People v. Wells, 33 Cal.2d 330, 346, 202 P.2d 53, 63, testimony of psychiatrists that defendant was under extreme emotional tension and attacked a prison guard because of a fear he was going to be attacked by them was not admitted, the court said:

"* * * a defendant on trial under the general plea of not guilty is conclusively presumed to be sane and evidence to show 'lack of capacity' to commit the crime charged, or any degree thereof, is inadmissible. This proposition, insofar as a showing of lack of capacity *because of legal insanity* is concerned, appears to be exactly what is contemplated by the legislation cited, but to construe and apply such legislation as permitting the prosecution to adduce evidence to prove a specific mental state essential to the crime and at the same time precluding the defendant from adducing otherwise competent and material evidence to disprove such particular mental state, short of evidence of legal insanity (which can be heard on the trial of that issue), would, we think, constitute an invalid interference with the trial process. A defendant charged with a crime is presumed to be innocent of, and is entitled to appear and defend against, the charge in its entirety, not merely as to *some* of its elements but as to *each and all* of those elements."

Partial responsibility for considerations other than mental illness has long been established in law. Perkins points out that the law recognizes "the frailty of the human frame" in the reduction of a homicide committed under sudden heat of passion to manslaughter. Intoxication "while not an excuse for crime, may disprove the presence of some particular state of mind and hence show 'that the less and not the greater offense was in fact committed' ". Perkins on Criminal Law, pages 769, 771.

In State v. Wilson, 234 Iowa 60, 77, 78, 11 N.W.2d 737, which involved intoxication rather than mental capacity, we quote from State v. Williams, 122 Iowa 115, 97 N.W. 992, as follows:

" "The very essence of the crime of murder in the first degree is premeditation and deliberation, and, if these be absent,

the crime is not higher, under ordinary circumstances, than murder of [in] the second degree. Hence any facts which go to show a state of mind incapable of deliberation and premeditation should be considered'."

We approve of the trial court's instruction which, under the facts of the case, permitted the jury to consider evidence of defendant's mental condition on the issue of willfullness, deliberation and premeditation.

■ II.  We cannot, however, agree with defendant that the jury should have been allowed to consider the evidence of his mental condition on the elements of malice aforethought and general criminal intent. While malice aforethought is the specific state of mind necessary to convict of murder, it is far different from the specific intent which is a necessary element of murder in the first degree. It may be express or implied from the acts and conduct of defendant. In State v. Hofer, 238 Iowa 820, 833, 28 N.W.2d 475, we approved of an instruction which, in part, defined malice aforethought as "a fixed purpose or design to do some physical harm to another existing prior to the act complained of; it need not be shown to have existed for any length of time before, but requires only such deliberation as *makes a person appreciate and understand at the time the act is committed its nature and probable consequences* as distinguished from an act done in the heat of passion; * * *."

The emphasized portion of this definition differs little from that portion of the instruction in State v. Buck, 205 Iowa 1028, 1034, 219 N.W. 17, 20, which describes the mental disorder requisite for a plea of insanity as that "which destroyed her power rationally to comprehend the nature and consequences of that act". It appears from these quotes that testimony sufficient to establish defendant's lack of mental capacity to have malice aforethought would also be sufficient to satisfy the requirements of the right and wrong test and entitle defendant to an acquittal on a plea of insanity rather than a reduction of the sentence to manslaughter.

■ Defendant argues, since a homicide may be reduced to manslaughter by proof of intoxication to the degree defendant **could not have** the necessary intent to kill contemplated in

malice aforethought, mental illness should also be considered in reducing the crime to manslaughter. The analogy is not sound. "No amount of voluntary intoxication can entirely excuse a homicide and thereby entitle the slayer to an acquittal." Perkins on Criminal Law, page 791. See also State v. Pell, 140 Iowa 655, 119 N.W. 154; State v. Wilson, 166 Iowa 309, 144 N.W. 47, 147 N.W. 739; State v. Wilson, 234 Iowa 60, 11 N.W.2d 737. Therefore a person who is so intoxicated that he is unable to entertain malice aforethought as defined above would still be convicted of manslaughter, while a person in the same state of mind but who is suffering from mental illness of such a nature that he could not appreciate and understand the nature and probable consequences of his act, would be entitled to an acquittal. Insanity will justify an acquittal, voluntary intoxication will not.

III. Even if the rule urged by defendant was a proper statement of the law, he would not have been entitled to the instruction he sought under the evidence. The evidence set out in Division I relates to premeditation and deliberation.

The offer of proof made by defendant in connection with the testimony of Dr. Fanny T. Ginsberg, assistant superintendent of the Mental Health Institute at Cherokee, was "* * * that she had examined all of the record in the case pertaining to the defendant and that she would have expressed an opinion concerning the mental status of this defendant at the time of the alleged incident in question. She would have also testified that the act in question was not a willful one, or a deliberate one, or a premeditated one."

None of this evidence tends to negative the intent inherent in malice aforethought as hereinabove defined, but applies only to the specific intent which is a necessary element of first-degree murder.

IV. Defendant claims the court erred "in not instructing on the burden of proof required for defendant to prove his defense of partial mental incapacity" citing many Iowa cases including State v. Wilson, 234 Iowa 60, 11 N.W.2d 737, which hold defendant must prove the defenses of insanity or intoxication by a preponderance of the evidence. He also argues the

merits of the federal rule stated in Feguer v. United States, 302 F.2d 214, 244, which places the burden on the prosecution to prove sanity beyond a reasonable doubt when evidence of insanity has been introduced. We are unable to see wherein Instruction No. 8 was prejudicial to the defendant in this respect.

Insanity was never urged as a defense. In this instruction the court told the jury the "evidence of defendant's mental condition was not admitted to show insanity, but solely for the bearing you deem it may have * * * [upon willfullness, deliberation and premeditation] * * *." He then told the jury "* * * if upon consideration of all the evidence in the case, including this evidence, you have a reasonable doubt that defendant acted upon the occasion charged willfully, deliberately and premeditatedly, then you cannot find defendant guilty of first-degree murder."

No burden of proof was placed upon defendant by this instruction. The jury was permitted to consider this evidence in deciding whether defendant had raised a reasonable doubt as to the willfullness, deliberation or premeditation of the act. It did not require defendant to establish an affirmative defense, but permitted the jury to consider the evidence in deciding whether the State had met its burden of proving an essential element of murder in the first degree beyond a reasonable doubt. The instruction given was more favorable to defendant than that which he urges upon this appeal.

V. Defendant's third and fourth assigned errors are based upon the trial court's ruling on evidence offered on the question of defendant's mental capacity to have the requisite intent for the crime charged. Since we have held in Divisions I and II that the evidence of his mental condition could be considered only to negative the specific intent necessary for first-degree murder, and since the jury's verdict reflects a finding favorable to defendant upon this issue, error, if any, in refusing to admit such evidence, is harmless. We, therefore, need not consider these assigned errors.

VI. In his final assignment of error defendant complains of the severity of the 50-year sentence and asks that it be reduced to eight years. The minimum sentence for second-degree

murder is ten years. Code of Iowa, section 690.3. We could not reduce the sentence below that minimum. The trial court had the accused and the witnesses before it during the trial. The letter written to the warden shows that it appreciated defendant's emotional problems. The trial court was in a much better position to determine the sentence than we are. We are not inclined to change a penalty imposed unless it is so disproportionate to the degree of guilt as to be manifestly too severe. Such is not the case here.—Affirmed.

All JUSTICES concur.