# IN THE COURT OF APPEALS OF IOWA

No. 19-0698
Filed May 13, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**NORMAN CHARLES WADSWORTH,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.


        Norman Wadsworth appeals his conviction for second-degree murder.

**AFFIRMED.**



        Blake D. Lubinus of Lubinus & Merrill, P.L.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.



        Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

Norman Wadsworth appeals his conviction for second-degree murder, contending there is insufficient evidence to sustain the conviction, the court abused its discretion in admitting cumulative and prejudicial evidence, defense counsel was ineffective in failing to present a defense of insanity, the court abused its discretion in excluding evidence of Wadsworth's mental condition, and the court erred in instructing the jury.  We affirm.

**I. Background Facts and Proceedings.**

On October 14, 2014, Wadsworth went to the office of the manager of the apartments from which he had been evicted the prior year.  Wadsworth blamed the manager, Darlene Crook, for his eviction.  He brought a white plastic bag containing a long kitchen knife.  He decided to "get back at" Crook because he was "fed up."  He wanted to harm Crook, and he thought about harming her as he walked to the apartment building.

Wadsworth walked into the office and stabbed Crook repeatedly until Dawn Konen pulled Wadsworth off of Crook.  Crook suffered fourteen stab wounds and fifty-seven incised wounds, for a total of seventy-one wounds.  Most of her wounds were on her head, neck, and hands.  Wounds on her hands and arms were consistent with defensive wounds, reflecting that Crook held up her arms to block the knife and tried to grab the knife from her attacker.  Crook was pronounced dead at the hospital.

Wadsworth was arrested and taken to the police station where he told detectives he had "beef" with Crook as he blamed her for his homelessness of the past year; he had reached his "breaking point" that day.

In 2019, Wadsworth was tried for second-degree murder.[1] Wadsworth testified at trial. He explained how he got off the bus near the apartment complex and walked to the apartment office "to get Darlene Crook." He explained how he blamed Crook for his eviction and his resulting homelessness. He admitted that while walking toward the apartment complex with a long kitchen knife and he was "fed up" with Crook and wanted to harm her. He testified he intended to harm Crook when he stabbed her.

Defense counsel requested jury instructions on "lesser-included" offenses of various degrees of assault. The trial court rejected the instructions, finding assault was not a lesser-included offense of second-degree murder as it required a showing of specific intent, whereas second-degree murder did not. In closing argument, the defense argued Wadsworth's actions constituted voluntary manslaughter and his eviction the year before the killing was the provocation.

The jury found Wadsworth guilty as charged. He now appeals, asserting the jury "was prevented from understanding the full context" of his actions. He asserts his "reality was a constant waking nightmare with Darlene Crook and what she had done to him at the very center."

**II. Scope and Standards of Review.**

We review challenges to the sufficiency of the evidence for errors at law. *See State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008).

---

[1] Wadsworth was tried previously on a charge of first-degree murder and found guilty of second-degree murder. *See State v. Wadsworth*, No. 16-1775, 2018 WL 2230666, at *1 (Iowa Ct. App. May 16, 2018). On appeal, this court overturned his conviction concluding that at the time of trial Wadsworth was not competent to stand trial but also finding sufficient evidence for the jury to reach a verdict of second-degree murder.

Claims of ineffective assistance of counsel are reviewed de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

We review the district court's evidentiary rulings for an abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013).

"A district court's refusal to submit a requested jury instruction is reviewed for correction of errors at law." *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013).

## III. Discussion.

*A. Sufficiency of the evidence.* To prove second-degree murder, the State was required to prove Wadsworth: (1) stabbed Darlene Crook; (2) Darlene Crook died as a result of being stabbed; and (3) Wadsworth acted with malice aforethought. "Malice aforethought requires the actor to have 'a fixed purpose or design to do physical harm to another that exists before the act is committed.'" *State v. Tyler*, 873 N.W.2d 741, 751 (Iowa 2016) (citation omitted). "The relationship that must be shown between the state of mind that is malice aforethought and the homicidal act is more accurately characterized as a causal relationship than as a temporal relationship." *State v. Lee*, 494 N.W.2d 706, 707 (Iowa 1993). The State only need show "such deliberation as makes a person appreciate and understand at the time the act is committed its nature and probable consequences as distinguished from an act done in the heat of passion." *State v. Gramenz*, 126 N.W.2d 285, 290 (Iowa 1964) (emphasis and citation omitted). Moreover, the law allows a presumption of malice aforethought from the use of a deadly weapon in the absence of evidence to the contrary. *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003). "[T]he presumption may be rebutted by evidence

showing the killing was accidental, under provocation, or because of mental incapacity." *Id.*

The nature of this attack demonstrated a fixed purpose to do physical harm. Moreover, Wadsworth's use of a dangerous weapon[2] permitted a presumption of malice aforethought. There is substantial evidence to support a finding of malice aforethought.

Wadsworth's defense was that his actions were provoked by his eviction and constituted voluntary manslaughter. Voluntary manslaughter "requires that both a subjective standard and objective standards be met before a defendant can be convicted of voluntary manslaughter." *Thompson*, 836 N.W.2d at 477 (citation omitted). "The subjective requirement of section 707.4 is that the defendant must act solely as a result of sudden, violent, and irresistible passion." *Id.* (citation omitted). The evidence Wadsworth presented may have shown a long-simmering anger exacerbated by mental illness but does not establish a "sudden" passion "from serious provocation sufficient to excite such passion in a reasonable person." *See id.* The facts did not compel a heat-of-passion reduction to voluntary manslaughter.

Wadsworth argues the jury would have come to a different verdict had they been able to fully consider his mental capacity. However, Wadsworth acknowledges the trial court followed current precedent, which holds diminished-capacity defenses are only available for specific-intent crimes. *See State v.*

---

[2] Wadsworth carried with him and used a long kitchen knife with a 5.5 inch blade; a "knife having a blade exceeding five inches in length" is a per se dangerous weapon. *See* Iowa Code § 702.7 (2014).

*McVey*, 376 N.W.2d 585, 587 (Iowa 1985). He also acknowledges second-degree murder is not a specific-intent crime. *See State v. Moses*, 320 N.W.2d 581, 589 (Iowa 1982) (district court did not err in excluding expert testimony that the accused was mentally unable to entertain malice); *accord Gramenz*, 126 N.W.2d at 290 ("While malice aforethought is the specific state of mind necessary to convict of murder, it is far different from the specific intent which is a necessary element of murder in the first degree. It may be express or implied from the acts and conduct of defendant.").

Wadsworth argues:

Application of established Iowa precedent as it related to the applicability of mental health evidence of diminished responsibility in a second-degree murder trial rendered an erroneous result. Therefore, the precedent should be re-examined. After such a re-examination, it should be plain that the only just result is to expand mental health evidence to questions of malice and provocation in second degree murder cases.

The request to re-examine precedent is not within this court's authority. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App.1990) ("We are not at liberty to overturn Iowa Supreme Court precedent."). The trial court did not abuse its discretion in following Iowa precedent.

*B. Cumulative and prejudicial photographic exhibits.* Wadsworth was willing to stipulate that he had stabbed Crook and Crook died from the stabbing. He

argues the admission of the photographs from the scene of the stabbing and the autopsy were therefore unnecessary, cumulative, and prejudicial.

As recognized in *Neiderbach*, "photographs are not inadmissible simply because they are 'gruesome or may tend to create sympathy . . . if there is just reason for their admission.'" 827 N.W.2d at 202 (citation omitted). "Trial courts have discretion in determining whether the value of pictures as evidence outweighs their grisly nature." *Id.* (citation omitted).

The district court admitted photographs of the crime scene, Wadsworth's clothing, and the victim's injuries. The photos depicted different relevant evidence and, therefore, were not needlessly cumulative. The autopsy photographs of the victim's injuries were highly probative of malice aforethought. *See State v. Plowman*, 386 N.W.2d 546, 550 (Iowa Ct. App. 1986) ("Autopsy photographs are admissible to illustrate medical testimony and demonstrate viciousness in connection with the State's claim of malice."). While the photographs may have been powerful evidence, the court did not abuse its discretion in concluding they were not unfairly prejudicial. *See Neiderbach*, 827 N.W.2d at 202–03 (noting "trial courts have discretion to admit into evidence autopsy or crime scene photographs showing a murder victim"). We note Wadsworth's testimony minimized his actions—he told the jury that he did not agree with the number of stab wounds identified by the medical examiner and that he did not believe he inflicted that many wounds. The photographs provided relevant and probative evidence showing the nature of the attack. We find no abuse of discretion here.

*C. Ineffective assistance of counsel.* Wadsworth contends trial counsel was ineffective in failing to assert an insanity defense.

Because Wadsworth's appeal was filed before July 1, 2019, he may raise a claim of ineffective assistance of counsel on direct appeal. *See State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019). In order to establish a claim of ineffective assistance, Wadsworth must prove both that counsel's performance was deficient and prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Here, defense counsel was not obligated to assert an insanity defense.

To prevail on an insanity defense, a defendant must show, by a preponderance of the evidence, at the time of the offense he suffered from a diseased or deranged condition of the mind rendering him (1) "incapable of knowing the nature and quality of the act" he was committing, or (2) "incapable of distinguishing between right and wrong in relation to that act." Iowa Code § 701.4; *see State v. Harkness*, 160 N.W.2d 324, 330, 337 (Iowa 1968). Wadsworth own expert's report notes:

> By his own account to both law enforcement and this psychologist, Mr. Wadsworth was aware of the nature and quality of his actions when he fatally attacked Ms. Crook on October 15, 2014. Although he does not appear to have considered the wrongfulness of his actions, there is no indication that he was unable to distinguish between right and wrong at the time of his actions against Ms. Crook.

Counsel could reasonably determine raising such a defense would be fruitless. *See, e.g.*, *Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008) (finding trial counsel did not breach any duty when the applicant's statements to police and the conclusions of both experts failed to support the insanity defense). Wadsworth's ineffectiveness claim fails.

*D. Exclusion of evidence.* Wadsworth asserts the trial court erred in excluding evidence of his mental condition that could establish an inability to form

malice aforethought. However, as we have already discussed above, the trial court followed current precedent. The court did not abuse its discretion.

*E. Jury instructions.* Wadsworth next claims that the trial court erred in failing to instruct the jury on various degrees of assault as lesser-included offenses of second-degree murder. The court denied giving the instructions because assault is a specific intent crime and, thus, is not a lesser-included offense of second-degree murder.[3]

"Lesser offenses must be submitted to the jury as included within the charged offense if but only if they meet both the appropriate legal and factual tests." *State v. Ware*, 338 N.W.2d 707, 714 (Iowa 1983). "An offense meets the legal test if the lesser offense is composed solely of some but not all elements of the greater crime." *Thompson*, 836 N.W.2d at 476 (internal quotation marks, alterations, and citations omitted). Statutorily, the lesser-included offenses of second-degree murder are voluntary and involuntary manslaughter. *See* Iowa Code §§ 707.4(3), .5(2). Because assault contains specific-intent elements, it is not a lesser-included offense of second-degree murder. *See State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010) ("The elements of assault under Iowa Code section 708.1 have not changed since our decision in [*State v. Heard*, 636 N.W.2d 227, 231 (Iowa 2001)]. Under this section, a defendant must commit an act that he intends to cause pain

---

[3] Wadsworth asserts the debate about jury instructions "highlights the absurdity" of the distinction between specific-intent and general-intent crimes and the availability of a diminished capacity defense, citing the dissent in *McVey*, 376 N.W.2d at 589–90 (Carter, J. dissenting). Wadsworth asserts, "The jury should have been instructed as to all offenses that reached [his] state of mind so that they could have the whole picture as to how he processed the information that informed his state of mind." Again, we are not at liberty to overrule precedent.

or injury to the victim or to result in physical contact that would be insulting or offensive to the victim or to place the victim in fear of physical contact that will be injurious or offensive. Because the elements of these assault alternatives include an act that is done to achieve the additional consequence of causing the victim pain, injury or offensive physical contact, the crime includes a specific intent component." (citations omitted)).

In any event, the jury found Wadsworth guilty of the greater crime, so he was not prejudiced by refusal to submit instructions on asserted lesser offenses.

Because we find there is substantial evidence to support the conviction for second-degree murder, and we find no abuse of discretion, ineffective assistance, or error of law, we affirm.

**AFFIRMED.**