**STATE of Iowa, Appellee,**

v.

**Teddy Eugene BOOTH, Appellant.**

No. 53251.

Supreme Court of Iowa.

July 24, 1969.

Reynolds, Kenline, Roedell, Breitbach & McCarthy, and David W. Leifker, Dubuque, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Michael S. McCauley, County Atty., for appellee.

LeGRAND, Justice.

This 34-year-old defendant was convicted of the rape of an eight-year-old girl in violation of section 698.1, Code of Iowa, 1966. He appeals from judgment sentencing him to a term of 50 years in the Men's Reformatory at Anamosa, Iowa. Since the appeal raises only the issue of the trial court's refusal to submit the affirmative defense of insanity, we need not recount the details of the offense. Suffice it to say the evidence was strong to support the charge.

The record shows defendant to have had emotional problems dating as far back as 1952 when he was 19 years old. At that time he was confined in The Michigan Reformatory on the first of his three felony convictions and was subjected to intensive psychiatric examination and evaluation. The reports of these examinations formed the basis for some of the conclusions reached by the psychiatrist who testified for defendant.

After his arrest for the crime involved in this appeal, defendant's motion for psychiatric examination was granted. The examination was conducted at the Iowa Security Hospital at Anamosa from November 16, 1967 until May 6, 1968—a period described in the record as "an unusually long time for evaluation."

The defendant assigns as error the trial court's refusal to permit the jury to pass on defendant's affirmative defense of insanity and, as related thereto, the refusal to permit the jury to have the Michigan psychiatric reports during their deliberations.

I. It is necessary that we set out the material part of the evidence bearing on defendant's sanity in some detail. This issue was urged upon the trial court at every stage of the trial, and defendant consistently claimed he was insane at the time the offense occurred. He first asked that he be given a psychiatric examination. He then plead insanity as an affirmative defense. He submitted several requested instructions on this issue. He made proper and timely objections to the trial court's failure to instruct on insanity, and he based his motion for a new trial mainly on this ground.

The trial court held there was no credible evidence by which a verdict of not

guilty by reason of insanity could be returned and refused to submit the issue.

■ Before setting out the evidence, we repeat several established principles by which this appeal must be resolved. The first is that one who meets our legal definition of insanity at the time he commits an alleged offense cannot be held responsible for what would otherwise be a criminal act. In Iowa the legal test for insanity is still the M'Naghten rule. State v. Harkness, Iowa, 160 N.W.2d 324, 337; State v. Arthur, Iowa, 160 N.W.2d 470, 478, 479.

■ Insanity is an affirmative defense and the defendant who asserts it has the burden of proof by a preponderance of the evidence. State v. Wilson, 234 Iowa 60, 76, 11 N.W.2d 737, 746; State v. Wharff, 257 Iowa 871, 876, 134 N.W.2d 922, 925.

■ Not every mental disorder permits a finding of insanity to excuse a defendant for his criminal conduct. State v. Gramenz, 256 Iowa 134, 140, 126 N.W.2d 285, 289.

■ Defendant's alleged insanity may be submitted to the jury only if there is evidence upon which the jury could find he was insane under the M'Naghten rule at the time the act was committed. State v. Harkness and State v. Arthur, both supra.

■ Like all affirmative defenses, insanity is a question of fact and should not be submitted unless the evidence would sustain an affirmative finding on that issue. State v. Brewer, 218 Iowa 1287, 1293, 254 N.W. 834, 837; State v. Hodge, 252 Iowa 449, 465, 105 N.W.2d 613, 622.

For present purposes we review the evidence in the light most favorable to defendant. Except for defendant himself, the only witness who testified concerning this matter was Dr. Douglas N. Johnson, a psychiatrist and clinical director of the Iowa Security medical facility at the Men's Reformatory. He testified defendant had a long history of "mental disorder," described as both schizoid and paranoid in character. He is in the lower 25th percentile of general intelligence and the doctor believes him to be of normal intelligence "at the lower end of the normal scale." He has extreme difficulty in adjusting to society.

Dr. Johnson evaluated defendant for a period of almost five months. These evaluations were participated in by the whole psychiatric staff at the institution. The testing showed defendant's values relating to behavior and society were quite different from those standard in our society. The tests showed defendant has a "mental disorder."

Under the influence of certain drugs—not truth serum—defendant asserted he could not remember the events of the night in question. Dr. Johnson testified the defendant, in his opinion, was truthful when he made this assertion.

The witness defined schizoid trends as those which have to do with a patient's capacity to form close relationships with other people. As to defendant this capacity has been impaired. The doctor testified, "I don't think he can form warm and close relationships with people that are satisfying as they would be to a person of normal mental health."

Paranoid trends were described as those dealing with the way in which a person interprets the actions of other people. The doctor said, "Mr. Booth in many instances feels that other people's behavior is designed in some way to hurt him. He feels he must be on the defensive and reacts against things that a person of good mental health would not react to. In other words he feels picked on very easily. We all have paranoid tendencies, however, Mr. Booth's is exaggerated."

Dr. Johnson described the defendant's childhood as very tragic with a great deal of emotional, cultural and educational deprivation. It was a background in which

the warmth, love and security normally given a child were missing.

Dr. Johnson testified, "The extent of the defendant's mental disorder is decidedly uncommon. As a matter of fact only eight to ten percent of the population can be said to have a mental disorder. A mental disorder of the defendant's type would appear in a normal population only one percent of the time and with his degree of severity considerably less than that."

■ By "mental disorder of defendant's type" it is apparent the doctor referred to the schizoid and paranoid tendencies previously mentioned. This condition would not warrant a finding of insanity unless it met the following test from State v. Harkness, at page 334 of 160 N.W.2d:

"The essence of M'Naghten is a demand of proof of defect in cognition, that is, whether defendant had capacity to know the nature and quality of his acts and distinction between right and wrong. * * * This traditional rule resolves the problem of defining the criterion on irresponsibility solely in regard to the capacity of the individual to know what he was doing and to know that it was wrong. * * *"

Dr. Johnson further testified the ingestion of alcohol by a person with defendant's personality disorder would affect his conduct far sooner than it would a person of normal mental health. He will "end up doing things that probably will get him into difficulty with society" when drinking. The witness then testified as follows:

"Q. Now doctor, based on your evaluation of the defendant and assuming that his testimony that he was high at the time of the alleged offense is correct, on that assumption, is it plausible that the defendant did not know the difference between right and wrong at that time? A. Yes, sir.

"Q. Doctor based on your evaluation of this defendant and assuming that his testimony that he was high at the time of the alleged offense is correct, is it plausible that the defendant did not know the nature and consequences of his act? A. Yes, sir."

Obviously these two questions were designed to bring defendant within the rule of the M'Naghten case. State v. Harkness, supra. It is perhaps noteworthy that in neither question did defendant's counsel refer to intoxication, but used instead the word "high" to describe defendant's condition. While "high" may be used to indicate a physical condition brought on by the use of alcohol, we doubt if it can be used interchangeably with intoxication. Nevertheless we discuss the question here on the assumption Dr. Johnson equated the two.

On cross-examination Dr. Johnson said, "If the defendant was not intoxicated I believe he would know the difference between right and wrong. I can't answer with absolute assurance. If defendant was not intoxicated I believe he would be able to adhere to the right. I believe if the defendant was not intoxicated he would know the nature and consequences of his act." In response to another question on cross-examination, the witness gave this answer, "* * * Let me say that in my opinion not intoxicated Mr. Booth knows the difference between right and wrong. * * * That intoxicated he might well lose this ability."

It is clear that, if intoxication is eliminated from the case, there is no evidence at all upon which the issue of insanity could have been submitted to the jury. The testimony of the psychiatrist is based upon the premise that defendant's drinking immediately prior to the alleged offense might have caused him to lose the ability to distinguish right from wrong or to appreciate the consequences of his conduct. His answers to the two key questions on defendant's probable mental state and his explanation of those answers on cross-examination established that defendant, if not intoxicated, would surely meet our test of sanity under the M'Naghten rule.

Starting with the inescapable conclusion that defendant, if not intoxicated, was sane, and assuming arguendo that he was intoxicated, we must decide if such intoxication entitles him to assert the defense of insanity, which would not be otherwise available to him. For reasons hereafter set out, we agree with the trial court that defendant was not entitled to have this issue put to the jury.

We point out defendant's only affirmative defense was that of insanity. Intoxication is important only as it bears on this defense.

Voluntary temporary intoxication does not excuse one for the criminal consequences of his conduct. 21 Am.Jur.2d, Criminal Law, section 44, page 128; 22 C.J.S. Criminal Law § 66, page 214, section 68, page 217; State v. Fox, 248 Iowa 1394, 1399, 85 N.W.2d 608, 611; Annotations, 8 A.L.R.3d 1236, 1240.

■ A distinction is made when prolonged extensive use of alcohol damages the brain and "settled or established" insanity results therefrom. This is treated the same as insanity from any other cause. However, a temporary condition caused by voluntary intoxication, such as is claimed here, does not excuse one from responsibility for his conduct.

The rule is stated in 22 C.J.S. Criminal Law § 70, page 221, as follows:

"Temporary insanity or frenzy resulting from voluntary use of intoxicants affords no defense, except that it may be sufficient to deprive the accused of the capacity to entertain a specific intent essential to the commission of a particular crime; but fixed or settled insanity, such as delirium tremens may afford a valid defense to a criminal charge, although superinduced by voluntary use of intoxicating liquor."

And 21 Am.Jur.2d, Criminal Law, section 44, page 128, says:

"It is well settled that temporary insanity which arises from present voluntary in-toxication is no defense. This is true even though the defendant's temporary state of mind may meet the requirements of legal insanity contained in the M'Naghten rule or whatever test of criminal responsibility is applied in the particular jurisdiction. On the other hand, if the accused was suffering from a settled or fixed insanity, even though caused by long continued alcoholic indulgence, the rule is the same as in the case of insanity arising from any other cause."

Defendant does not allege any settled or fixed insanity, nor is there any evidence which would sustain such a claim. His defense is limited to saying he should not be held responsible because he drank heavily immediately prior to the alleged crime and was by reason thereof not accountable for his conduct. He claims a temporary blackout. His condition, according to the evidence, resulted entirely because of "present voluntary intoxication." Furthermore this result was not unexpected, for defendant himself testified, "I had experienced periods of loss of memory while under strain or heavy drinking. The strain and heavy drink usually accompanied each other."

Defendant's affirmative defense of insanity depends wholly upon his state of voluntary intoxication at the time of the alleged offense. Under the almost unanimous rule this affords defendant no escape from responsibility. Griffin v. State, Fla.App., 96 So.2d 424, 425; People v. Hansen, 32 Ill.App.2d 448, 178 N.E.2d 206, 208; State v. Salmon, 10 Ohio App.2d 175, 226 N.E.2d 784, 787; McIntyre v. State, Alaska, 379 P.2d 615, 616, 8 A.L.R.3d 1231, 1234 and authorities there cited; State v. Patton, 206 Iowa 1347, 1348, 221 N.W. 952; State v. Johnson, 215 Iowa 483, 488, 245 N.W. 728, 731, 732; State v. Linzmeyer, 248 Iowa 31, 34, 79 N.W.2d 206, 208; State v. Gramenz, 256 Iowa 134, 140, 126 N.W.2d 285, 290, 291; State v. Wharff, 257 Iowa 871, 875, 876, 134 N.W.2d 922, 925; People v. Alexander, 182 Cal.App.2d 281, 6 Cal.Rptr. 153, 158; State v. Clokey, 83 Idaho 322, 364 P.2d 159, 164; Easter v.

District of Columbia, (D.C. Court of Appeals), 209 A.2d 625, 626; Driver v. Hinnant, 4 Cir., 356 F.2d 761, 764; Johnson v. State, 43 Ala.App. 224, 187 So.2d 281, 283; Cirack v. State, Fla., 201 So.2d 706, 709.

Most of these authorities recognize and discuss the difference between "settled and fixed insanity due to prolonged excessive use of alcohol" and the temporary state of intoxication, no matter how pronounced, which results from the recent voluntary use of intoxicating liquor.

We recognize, of course, the qualification of this general rule, which holds intoxication may affect one's responsibility for criminal conduct if it tends to negate one of the elements the State must prove to establish guilt. Even though temporary voluntary intoxication, no matter how pronounced or how gross, be considered legal insanity or furnish a defense to the commission of a crime, nevertheless evidence of intoxication may be admissible and important as bearing upon the defendant's motive or intent. State v. Wilson, 234 Iowa 60, 76, 11 N.W.2d 737, 745; State v. Wharff, 257 Iowa 871, 876, 134 N.W.2d 922, 925. When specific intent must be shown, intoxication which prevents one from forming such intent is material and may entitle defendant to acquittal. 22 C.J.S. Criminal Law § 70, page 221; State v. Johnson, 215 Iowa 483, 488, 245 N.W. 728, 731; State v. Evenson, 237 Iowa 1214, 1219, 24 N.W.2d 762, 765; State v. Fox, supra; State v. Linzmeyer, 248 Iowa 31, 34, 79 N.W.2d 206, 208; State v. Wharff, 257 Iowa 871, 876, 134 N.W.2d 922, 925; State v. Hunley, Iowa, 167 N.W.2d 645, 649; Cirack v. State, supra; 21 Am.Jur.2d, Criminal Law, section 107, page 185; McIntyre v. State, supra; Annotations, 8 A. L.R.3d 1236, 1246.

This doctrine does not help defendant here because the crime of rape requires no specific intent. The statutory definition makes the proof of certain acts alone sufficient and the general criminal intent is supplied by the performance of such acts. As we said in State v. Wharff, supra, 257 Iowa 871, 876, 134 N.W.2d 922, 925, A legislature may make an act a crime without regard to intent. Whether criminal intent is required is to be determined as a matter of construction from the language of the act. We recently held this to be true in a case of forcible rape. State v. Pilcher, Iowa, 158 N.W.2d 631, 637. See also 75 C.J.S. Rape § 13, page 477. It is, of course, even more true when the charge is statutory rape.

In this regard it might be well to point out the trial court by Instruction 15 permitted the jury to consider defendant's general mental condition and his alleged intoxication as bearing upon his general criminal intent. This instruction was at least as favorable as defendant deserved.

II. There remains the claim that the trial court committed reversible error in refusing to permit the jury to have Exhibit 22 during their deliberations. This exhibit showed the result of the psychiatric examinations while defendant was confined in the Michigan Reformatory. The trial court had permitted portions of it to be introduced and had excluded other parts. The refusal to let it go to the jury room was based on the thought that the report, with portions deleted or blocked out, would be confusing rather than helpful and would permit the jury to speculate on the omitted portions.

Since this exhibit bears only upon the issue of insanity, which we have said was properly withdrawn from the jury, there was no reversible error in excluding Exhibit 22 from the jury's consideration. As bearing on this question see State v. Crisman, 244 Iowa 590, 594, 595, 57 N.W.2d 209, 210.

We hold the trial court was right in determining there was no evidence to permit submission of the affirmative defense of insanity for jury determination, and we

therefore affirm the judgment of the trial court.

Affirmed.

All Justices concur, except BECKER, J., who takes no part.