**STATE of Iowa, Appellee,**

v.

**James George COLLINS, Appellant.**

**No. 64190.**

Supreme Court of Iowa.

May 13, 1981.

Martha Shepard, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Dan Johnston, Polk County Attorney, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

HARRIS, Justice.

In defending against a first-degree robbery charge (sections 711.1 and 711.2, The Code 1981) defendant requested instructions on the effect of his intoxication and also on his defense of diminished responsibility. The trial court instructed on intoxication but refused to also instruct on diminished responsibility. Following his conviction, defendant brought this appeal on the basis of the refusal. We affirm the trial court.

Defendant's activity which gave rise to the charge is not disputed. In the early morning hours of June 30, 1979, he entered an all-night grocery store in Des Moines. The night clerk became suspicious when defendant collected things from around the store and placed them on the front counter. When no other customers remained in the store defendant pulled a gun and pointed it at the head of the night clerk. He demanded the clerk turn off the lights, open the cash register, package the groceries, and, ultimately, open the safe. Except for opening the safe all demands were met. After telling the night clerk to remain in the back room defendant took the groceries and money and left. Defendant was followed from the scene by a friend of the night clerk who chanced to enter the store as defendant was leaving.

The clerk called police who apprehended and arrested defendant. After he was charged, defendant filed notice of his intent to rely on the defenses of diminished responsibility and intoxication.

At trial the State showed the foregoing events and then rested. Defense counsel then told the court she would request an instruction on diminished responsibility and, possibly, on intoxication, depending on how the evidence developed.

Defendant's sister, Karen Davenport, testified of defendant's experience with alcohol and other drugs and especially of its severe long term effects on defendant. She also related that defendant had ingested drugs, including alcohol, earlier in the day of the robbery. Karen's husband, Jack Davenport, testified that defendant drank a large quantity of beer on the afternoon and evening of the robbery. The defendant testified that he did not remember any activity between the time he and Jack Davenport had gone fishing earlier the same evening until he was fingerprinted after his arrest.

Under a court order Shahe Zenian, a clinical psychologist, examined defendant while he was awaiting trial. He testified in part:

> My diagnosis was based upon my examination findings, and these are listed by order of increasing severity and chronicity. That is to say, the condition which is most likely to resolve is mentioned first

and the ones that are least likely to resolve are mentioned last.

First was that I found him to be suffering from alcoholism, primarily by history and the way that he looked on his test findings. There were a lot of similarities between this patient and other people that we know that have been diagnosed as alcoholic.

Secondly, I found him to be drug dependent by history, specifically on the following types of drugs; barbituates, tranquilizers and psychostimulants. And, finally, I felt he was suffering from a personality disorder, specifically a special type that we call passive dependent personality. That constituted my diagnostic findings in this matter.

According to Mr. Zenian the likely effect of taking the quantity of alcohol and other drugs defendant was said to have consumed would be to cause periods of blackout.

On the basis of this evidence defendant requested an instruction on both theories. As noted, the trial court refused to instruct on diminished responsibility but gave the following instruction on intoxication:

The defendant has claimed that at the time and place of the commission of the offense he was intoxicated. The fact that a person is under the influence of intoxicants or drugs does not excuse nor does it aggravate his guilt. However, intoxication may be shown where it is relevant to the person's specific intent at the time of the act charged.

However, even though a person is under the influence of an intoxicant, if he still possesses a mental capacity sufficient to form the intent requisite to the offense charged; or, if he has the intent present in his mind before he falls under the influence of the intoxicant and then commits the act, he will not be absolved of the responsibility for the act. Thus, intoxication is a defense only when it produces a mental disability such as will render the person incapable of forming the intent which is an element of the offenses charged.

In considering the question of the defendant's intoxication, it should be considered along with all the other evidence in the case which bears on the question of intent which is explained in Instruction No. 11.

I. In order to understand the two defenses upon which defendant relies, it is helpful to consider them together with the defense of insanity. The three theories are akin to one another.

The insanity defense, probably the oldest and certainly the broadest of the three, is now codified in section 701.4, The Code. That section provides:

No person shall be convicted of any crime if at the time such crime is committed the person suffers from such a diseased or deranged condition of the mind so as to render the person incapable of knowing the nature and quality of the act he or she is committing or incapable of distinguishing between right and wrong in relation to that act. Insanity need not exist for any specific length of time before or after the commission of the alleged criminal act.

We have said the section codifies the M'Naghten rule, *State v. Hamann*, 285 N.W.2d 180, 182 (Iowa 1979), and that the words "right" or "wrong," under the test refer to legal, not moral, right or wrong. *Id.* at 184.

Chapter 701, The Code, provides for special defenses in criminal cases but does not mention the defense of diminished responsibility. Nevertheless, since *State v. Gramenz*, 256 Iowa 134, 126 N.W.2d 285 (1964), we have recognized the defense as a matter of common law. *Committee on Professional Ethics v. Holmes*, 271 N.W.2d 702, 703 (Iowa 1978); *State v. Jacoby*, 260 N.W.2d 828, 836 (Iowa 1977); *State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976). Under these cases, diminished responsibility may be offered as a defense where an accused, because of a limited capacity to think, is unable to form a necessary criminal intent. It differs from the usual insanity situation where illness confuses or distorts the thinking process. The distinction

between insanity and diminished responsibility is pointed out in 4 Yeager and Carlson, *Iowa Practice* § 7 (1979):

It must be recognized that diminished capacity is not a subdivision of the general subject, insanity, but is a different type of mental condition, a defect which affects [the accused's] capacity for thinking, rather than an illness which distorts his thought processes. Diminished capacity is not an absolute defense as is insanity, but is a fact which must be considered by the court or jury in its deliberations as to whether a particular mens rea has been proved. Nothing in ... section [701.4] should affect the diminished capacity defense one way or another.

▮ Intoxication is sometimes raised, and often inaccurately referred to as a "defense," in criminal prosecutions. The concept is now codified in section 701.5, The Code, which provides:

The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates his or her guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act or in proving any element of the public offense with which the person is charged.

The rule under section 701.5 is substantially a codification of prior law. It was once suggested that the last sentence of the section might undermine our established rule that "[a] temporary inability to distinguish right from wrong, brought on by the ingestation of alcohol, is not insanity, even though the condition results from the effect of the alcohol aggravating a pre-existing pathological condition not in itself amounting to insanity." *Yeager and Carlson*, supra, § 8. As the same authorities later concede, under our opinion in *State v. Gambell*, 262 N.W.2d 792, 795–96 (Iowa 1978), the old rule remains. Temporary intoxication is simply evidence to be considered by the jury on the issue of intent.

Extensive alcoholism or drug addiction can of course lead to a condition for which the defense of insanity might be raised. The situation is to be distinguished from the temporary effects of intoxication for one not so afflicted. We explained the distinction in some detail in *State v. Booth*, 169 N.W.2d 869, 873 (Iowa 1969):

Voluntary temporary intoxication does not excuse one for the criminal consequences of his conduct. [Authorities.]

A distinction is made when prolonged extensive use of alcohol damages the brain and "settled or established" insanity results therefrom. This is treated the same as insanity from any other cause. However, a temporary condition caused by voluntary intoxication, such as is claimed here, does not excuse one from responsibility for his conduct.

▮ Booth did not allege that any settled or fixed insanity resulted from his intoxication. Defendant here does not either. This defendant only raises, aside from his assertion of temporary intoxication, his defense of diminished responsibility. Since our opinion in *Booth* we have applied the same rule to the ingestation of drugs. Temporary drug intoxication does not constitute a complete defense in a homicide case. Neither would voluntary drug intoxication reduce, just as alcohol intoxication would not, a homicide from murder to manslaughter. *State v. Hall*, 214 N.W.2d 205, 207–10 (Iowa 1974).

In applying the rule it is now incumbent upon the trial court to instruct the jury that the burden of proof to show defendant's intent does not leave the State, even though defendant raises the question of his intoxication. *State v. Holmes*, 276 N.W.2d 823, 826 (Iowa 1979); *State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977). As *Holmes, Templeton*, and indeed the trial court's instruction, make clear, evidence of temporary intoxication is nevertheless admissible. The evidence is received, not to show settled or fixed intoxication amounting to insanity, but merely to cast whatever light it might for the jury's deliberations on the defendant's specific criminal intent. Even such limited use of the evidence of temporary intoxication might seem at odds with the cardinal principle that ingestion of in-

toxicants does not excuse guilt. Yet, at least since our opinion in *Templeton*, we have accommodated both the cardinal principle and the limited use of the evidence.

Turning again to the record here we do not believe defendant's evidence of the long-term effects of alcoholism and other drug addiction reach toward a diminished responsibility defense. We agree with the trial court that defendant's evidence made it appropriate to instruct the jury on intoxication. To whatever extent the evidence supported a theory of defense on the basis of a more permanent affliction, it reached, not for diminished responsibility, but for settled or fixed insanity as described in *Booth*. There we identified the situation "when the extensive use of alcohol [or other drugs] damages the brain and ... insanity results therefrom. This is treated the same as insanity from any other cause." 169 N.W.2d at 873. No special instruction on such settled or fixed insanity was requested. Defendant cannot claim error for the trial court's refusal to instruct on diminished responsibility.

AFFIRMED.