# IN THE COURT OF APPEALS OF IOWA

No. 19-0299
Filed January 21, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CHEYANNE R. HARRIS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.

Cheyanne Harris appeals the judgment and sentence entered on her conviction of murder in the first degree. **AFFIRMED.**

Stuart Hoover, East Dubuque, Illinois, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Vaitheswaran and Greer, JJ.

**VAITHESWARAN, Judge.**

A four-month-old child was found dead in a swing facing the corner of a "hot," "dark," "stuffy" bedroom. An autopsy revealed three contributing causes of death: dehydration, malnutrition, and infection from severe diaper rash.

The State charged the child's mother Cheyenne Harris with first-degree murder and child endangerment resulting in death. *See* Iowa Code §§ 707.1, 707.2(1)(b), 707.2(1)(e), 726.6(1)(a), 726.6(1)(b), 726.6(1)(d), 726.6(4) (2017). A jury found her guilty as charged. Applying the "one murder rule," the district court sentenced Harris to life in prison solely on the first-degree murder conviction. *See State v. Ceretti*, 871 N.W.2d 88, 96 (Iowa 2015) (stating the one-homicide rule "prohibits 'a trial court from entering judgments and imposing sentences for multiple homicide offenses if the defendant was convicted for killing only one person'" (quoting *State v. Fix*, 830 N.W.2d 744, 745 (Iowa Ct. App. 2013))).

On appeal, Harris contends (1) the district court should have admitted "opinion evidence of a mental impairment due to a mental disease or defect" to "negate the *mens rea* for a non-specific intent crime" and (2) her trial attorney was ineffective in failing to afford her the opportunity to present "a diminished responsibility defense and simultaneously allowing the State to pursue a line of argument that confronts a mental health defense."

## I.    *Opinion Evidence*

The jury received the following instruction on the elements of proof for first degree murder:

> 1. During the timeframe of August 4, 2017, through and including August 30, 2017, the defendant killed S.K.
> 2. S.K. was under the age of 14.

      3. The defendant did so with malice aforethought.

      4. The defendant was committing the offense of Child Endangerment as defined in Instruction No. 21.

      5. S.K.'s death occurred under circumstances showing an extreme indifference to human life.

Instruction 21 referenced above stated: "Concerning element number 4..., the defendant committed Child Endangerment if she, as the parent of S.K., intentionally committed an act or a series of acts using torture or cruelty that resulted in bodily injury to S.K."

The jury received the following instruction on the elements of child endangerment resulting in death:

      1. Between the dates of August 4, 2017 and August 30, 2017, the defendant was the mother of SK.

      2. SK was under the age of fourteen years;

      3. The defendant willfully deprived SK of the necessary food, water, health care or supervision appropriate for a child of SK's age.

      4. The defendant was reasonably able to provide food, water, health care or supervision to SK.

      5. As a result, SK suffered substantial physical harm.

      6. SK died as a result of the substantial physical harm.

Harris concedes both charges were "non-specific intent" crimes. The only question is whether the court should have allowed her to negate the intent components of the crimes with mental-health evidence. The issue arose as follows.

Prior to trial, Harris notified the court of her plan to call an expert witness, clinical psychologist Dr. Michael O'Hara, "in support of her defenses of diminished responsibility and/or intoxication." The State filed a motion in limine seeking to prohibit the defense from eliciting "any questioning or arguments that state or insinuate that the Defendant could not form the specific intent to commit the crimes charged due to intoxication." The State noted that "Defendant is charged only with

general intent crimes" and "[t]he defense of intoxication is not a defense to general intent crimes."

At trial, Harris again announced her plan to call Dr. O'Hara. The prosecutor responded by questioning "the theory" supporting his testimony. Citing *Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008), she reiterated that both charges were "general intent" crimes and "[t]he *Anfinson* case is very clear that insanity, diminished responsibility, intoxication, none of those things can go towards general intent crimes." Harris' attorney responded as follows:

> [Dr. O'Hara] has had an opportunity to interview Ms. Harris. [W]e've made the report of Dr. O'Hara available to the State. It's really just a finding of post-traumatic stress disorder—three findings in particular, post-traumatic stress, substance abuse, and then also major depressive disorder. . . . The difference between us and *Anfinson*, Your Honor, is in *Anfinson* they were actually trying to get the instruction on diminished capacity and they were trying to get the defense of, you know, the legal excuse in some form of diminished capacity. That's not our argument. Our argument is that we should be able to combat the willful nature of it or at least have some explanation for what was happening to lead this accident to occur. So the same argument at the beginning about the willful act—and I understand it's general intent, but we argue that because of her condition, this was an accident. We're allowed to do that.

*See Anfinson*, 758 N.W.2d at 505 (concluding following a conviction for second-degree murder that "[e]ven though insanity and diminished responsibility defenses may have been incompatible with Anfinson's accidental death theory, evidence of the defendant's mental state was not incompatible with the notion that [the child's] death was accidental and, in fact, would have supported her claim that the drowning [of the child] was due to her inattentiveness" and concluding "trial counsel's strategic decision to renounce evidence of his client's compromised mental state after a less than complete investigation was not based on reasonable

professional judgment"); *State v. Collins*, 305 N.W.2d 434, 436 (Iowa 1981) ([D]iminished responsibility may be offered as a defense where an accused, because of a limited responsibility to think, is unable to form a necessary criminal intent."). The court then clarified:

> COURT: And [defense counsel], you have no intention of asking your expert whether this excuses her behavior—
> DEFENSE COUNSEL: Correct.
> COURT: —correct?
> DEFENSE COUNSEL: Right.
> COURT: He's just going to pretty much be more factual, that she suffered from these conditions.
> DEFENSE COUNSEL: His diagnosis. That's it.
> COURT: And it's not going to be it was someone who was using methamphetamine to self-medicate depression—I don't have any idea what the report says—would be incapable of physically taking care of the child, we're not getting that kind of an opinion?
> DEFENSE COUNSEL: That's right.
> COURT: It's just this is what she suffered from.
> DEFENSE COUNSEL: That's correct.
> COURT: Okay. And you stipulate or at least agree when we argue instructions that this in no way entitles her to the diminished responsibility instruction under *Anfinson*?
> DEFENSE COUNSEL: That's right. We are not asking for it and it's not in the proposed instructions.

At trial, Dr. O'Hara testified to Harris' "mental state at the time of the offense." After meeting with her for about two-and-a-half hours, he diagnosed her with "major depression at a severe level recurrent with . . . peripartum onset," "post-traumatic stress disorder," and "substance abuse, severe, with stimulant medication, methamphetamine." The State countered with its own expert, Dr. Dennert, who (1) noted the "difficult[y]" in "diagnos[ing] someone in retrospect, particularly in a forensic case"; and (2) nonetheless found the diagnosis of major depressive disorder reasonable; but (3) said, "the extent of the impairment that would be necessary to prevent Ms. Harris from recognizing her child was dying of

starvation would carry over into other areas" and he did not see that "sort of global impairment."

At the jury instruction conference, the State proposed an instruction specifying the extent to which the jury could consider Dr. O'Hara's testimony. *See id.* at 506 ("A proper limiting instruction would suffice to clarify that [the defendant's] purpose in offering such evidence is not in furtherance of a claim she was insane or incapable of forming specific intent at the time of [the child's] death, but rather to support her theory [the child's] death was accidental."). Harris' attorney acknowledged Dr. O'Hara's testimony didn't rise to [the] level anyway for a diminished responsibility defense or insanity defense." He explained the State still had to prove "general intent and we can still have an argument about the general intent and Ms. Harris' capacity at the time." The court settled on the following language:

> Defendant's purpose in offering the testimony of Dr. O'Hara was not in furtherance of a claim she was insane or incapable of forming a specific intent to commit a particular offense in August of 2017. You may consider the testimony in determining whether she was aware she was doing an act and whether she did it voluntarily, not by mistake or accident.

The court asked Harris' attorney whether the language worked for him. He responded, "It does, Your Honor."[1]

Notwithstanding trial counsel's concession that the diminished-responsibility and intoxication defenses to specific intent crimes were unavailable and his agreement to the language of the limiting instruction, Harris now contends

---

[1] Although the instruction was not initially uploaded to the trial court binder, the district court placed the instruction in the binder following a limited remand order from this court.

the first-degree murder instruction should be read as "heightening . . . the intent element," thereby allowing "the possibility that defenses previously foreclosed in such circumstances may become appropriately available." The State responds that Harris failed to preserve error. The State notes that the district court "permitted the defense to [introduce Dr. O'Hara's testimony] for the purpose it desired," which did not include the purpose of raising "a diminished responsibility defense."

We agree with the State. Harris' contention that the district court should have allowed her to use Dr. O'Hara's testimony for purposes other than to establish her mental-health diagnoses and lay doubt about her ability to form general intent is inconsistent with the position she took in the district court.[2] She cannot change horses in midstream. *See Clark v. Estate of Rice ex. rel. Rice*, 653 N.W.2d 166, 171–72 (Iowa 2002) (stating appellant was foreclosed from changing theory on appeal). Because Harris did not seek a diminished-responsibility instruction and, indeed, affirmatively asserted she would not do so, we conclude error on her present contention was not preserved and we decline to reach the merits.

## II.     *Ineffective Assistance of Counsel*

Harris claims her trial attorney was ineffective in failing to pursue "a diminished responsibility defense and simultaneously allowing the State to pursue a line of argument that confronts a mental health defense." Harris was sentenced before the effective date of a statutory amendment that precludes consideration of ineffective assistance claims on direct appeal. Accordingly, we may address the

---

[2] Harris did argue for a specific-intent instruction. The district court denied the request. Harris does not challenge that denial on appeal. She focuses exclusively on the court's failure to permit use of Dr. O'Hara's testimony to negate the *mens rea* contained in the instructions as given.

claim if we deem the record adequate. *See State v. Harrison*, 914 N.W.2d 178, 206 (Iowa 2018). We do. To prevail, Harris must show (1) counsel breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Harris concedes, "[E]vidence of diminished responsibility may not be presented at trial in order to negate a general intent offense," citing *State v. McVey*, 376 N.W.2d 585, 588 (Iowa 1985) (holding "the diminished responsibility defense is available only to specific intent crimes"). As discussed, she also conceded the offenses as charged were general-intent offenses. Nonetheless, Harris argues, "Defense counsel had a burden to exhaustively pursue and present all defenses available, as well as defenses that may still have yet to be recognized." To the contrary, counsel had no obligation to raise an unrecognized defense. *See State v. Doolin*, 942 N.W.2d 500, 507 (Iowa 2020) (concluding counsel had no duty to raise an issue that, "under established Iowa law and the clear majority of other jurisdictions . . . would have been meritless"). Harris admits her attorney "commendably" called an expert, who went as far as he could in the face of precedent. Trial counsel did not breach an essential duty in failing to advocate for a change in the law.

Harris next contends her trial attorney was ineffective in failing to challenge statements made by the prosecutor during closing argument that, in her view, amounted to "a full throated attack of any sort of justification or diminished responsibility as it relate[d] to [her] mental health." She asserts the attack of her "mental health defense without the opportunity to present such a defense rendered [her] at an unfair disadvantage."

As discussed, Harris put her mental health at issue by calling Dr. O'Hara, but she did so for the limited purpose of raising doubts about her general intent to commit the crimes. The prosecutor simply highlighted those portions of the record that addressed Harris' diagnosis of depression and the implications of the diagnosis on her general intent. The prosecutor explained:

> [Harris] was able to drive to the grocery store. She bought groceries for her family four days prior. Is that someone who's just so depressed they can't even function, they don't know what they're doing? She got milk, chocolate milk, pop, chips. She was able to Facebook, Instagram, text. She's posting about fashion and her dog on Facebook while [the child] is dying in the back room. Is that someone who's so depressed that she doesn't know what she's doing? She's able to clean the house. She was able to get rid of the dog. She put [her older child] in a pretty dress before the police arrive. . . . . She clearly had the mental functioning to know exactly what she was doing. She just didn't want to accept the consequences for her actions.

That was the State's prerogative. *See State v. Graves*, 668 N.W.2d 860, 874 (Iowa 2003) ("A prosecutor 'is entitled to some latitude during closing argument in analyzing the evidence admitted in the trial.' Moreover, a prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence." (citation omitted)). Harris' attorney did not breach an essential duty in failing to object to the prosecutor's statements during closing argument.

We affirm Harris's judgment and sentence for first-degree murder.

**AFFIRMED.**