# IN THE COURT OF APPEALS OF IOWA

No. 22-2107
Filed May 22, 2024

**LOGAN JEFFREY SHOEMAKER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Patrick A. McElyea,

Judge.

An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Debra S. De Jong, Orange City, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee State.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

"Did I hit him? Did I hit the officer?"  After asking about the results of his collision of a stolen garbage truck with a police cruiser, Logan Shoemaker was brought to trial and convicted of multiple charges, including attempted murder of a police officer.  Now in postconviction-relief (PCR) proceedings, Shoemaker raises several challenges to the denial of his PCR application based on ineffective assistance of his trial counsel.  Following our de novo review, we affirm.

**I. Background Facts and Prior Proceedings.**

Shoemaker went on a "multiple-day spree of criminal activity in September 2017."  *State v. Shoemaker*, No. 18-1382, 2019 WL 5067177, at *1 (Iowa Ct. App. Oct. 9, 2019).  This activity included repeatedly calling and texting a woman named Katie, refusing to leave her home, using "a truck he stole as a battering ram, purposefully crashing into vehicles parked near Katie's home," fighting Katie and beating her up, using "an instrument to break windows out of vehicles," fleeing in the stolen truck—a red Dodge Ram—and crashing "into the back of a stopped garbage truck," threatening its driver with a gun and threatening to shoot him if he did not exit the vehicle, continuing "to flee in the garbage truck," and finally crashing the garbage truck into Police Chief Terry Behning's service vehicle, seriously injuring Chief Behning.  *Id.* at *1–2.

In October, the State charged Shoemaker via trial information with thirteen counts based on his activities the previous month.[1]  In June 2018, Shoemaker pled

---

[1] The charges were attempted murder in violation of Iowa Code section 707.11(1) (2017); serious injury by vehicle in violation of section 707.6A(4); eluding or attempting to elude while participating in a felony or resulting in bodily injury in violation of section 321.279(3); willful injury causing serious injury in violation of

guilty to eight of the charges,[2] proceeding to trial on only five (which related to actions after Shoemaker took the garbage truck): attempted murder, serious injury by vehicle, eluding or attempting to elude while participating in a felony or resulting in bodily injury, willful injury resulting in serious injury, and first-degree robbery. After Shoemaker moved in limine, the parties agreed prior to trial that the State could offer limited evidence of Katie's interactions with Shoemaker in September 2017 and law enforcement could testify to their observations.

The case came to jury trial the same month. During voir dire—either in a written pre-trial questionnaire or during in-person questioning—four jurors that were eventually seated on the jury admitted to prior knowledge of the case or of Chief Behning. L.S. stated that she had heard of the case through television and radio coverage the morning of voir dire. When asked if anything she heard or saw would make it difficult for her to be fair and impartial, she said "I don't think so . . . . I mean, it was on the news, but that was it." When asked if she could reach a verdict based just on the evidence presented during trial, she responded, "Well, I would hope so." M.D. had seen news and social media coverage about Chief Behning and fundraisers for him. In response to being asked if there was "anything

_____

section 708.4(1); first-degree robbery in violation of sections 711.1(1) and 711.2; two counts of second-degree theft in violation of section 714.2(2); stalking with a dangerous weapon in violation of section 708.11(b)(2); three counts of second-degree criminal mischief in violation of section 716.4(1); assault while displaying a dangerous weapon in violation of section 708.2(3); and fourth-degree criminal mischief in violation of section 716.6(1)(a)(1).

[2] Shoemaker pled guilty to two counts of second-degree theft, stalking with a dangerous weapon, three counts of second-degree criminal mischief, assault while displaying a dangerous weapon, and fourth-degree criminal mischief. He filed written guilty pleas to assault while displaying a dangerous weapon and fourth-degree criminal mischief; the others were handled in person at the final pretrial conference.

about the things that you read or saw that would make it difficult for you to be fair and impartial in this case" she answered, "I don't think so." She also agreed that she could reach a verdict based just on the evidence she heard in the courtroom and would follow the law as the judge instructed her. M.N. saw news coverage of the events while he was in school. He was asked if he would be willing to wait to make a decision until all of the evidence was in and he was instructed on the law, he answered, "Yes." He also agreed that he had not made up his mind solidly yet. Lastly, C.G. answered that she had seen Chief Behning and his injury in person. However, she agreed that seeing him would have no impact on her ability to be a fair and impartial juror. Trial counsel did not move for a change of venue.

At trial, during his opening statement, trial counsel said, "Shoemaker did a lot of bad, horrible things in September of 2017. He did steal multiple cars. He rammed cars into other cars to damage them because he was upset. . . . He did all of those things and more, many of which are crimes." He added that Shoemaker "was strung out on methamphetamine that day." And he told the jury that Shoemaker both completely destroyed the truck that he drove first and totaled the garbage truck that he drove second. Then he asked the jury to return a verdict of guilty on the charges of serious injury by vehicle and eluding or attempting to elude while participating in a felony or resulting in bodily injury and to return a verdict of guilty on the lesser-included second-degree robbery charge. However, he insisted that Shoemaker was "not guilty of attempted murder. He was not trying to hit Chief Behning. He is not guilty of willful injury because he wasn't trying to hurt Chief

Behning." The State introduced video evidence of almost all the events through either dashboard camera, body camera, or rear-facing camera footage.[3]

After the State rested its case, Shoemaker moved for a judgment of acquittal on the charges of attempted murder; willful injury resulting in serious injury; and first-degree robbery, which the court denied. Shoemaker testified and admitted that he stole two pickup trucks, rammed multiple cars, smashed out car windows, and stalked Katie. He added that he had been using methamphetamine that week and that methamphetamine impaired his thinking and made him "think on impulse . . . without thinking of the outcome." While he also admitted that he was driving at least one hundred miles per hour, "totaled out" the red Dodge Ram, and threatened to shoot the driver of the garbage truck if he did not get out, he insisted that he did not have a gun and was not intending to kill Chief Behning. At the close of the evidence, Shoemaker again moved for a judgment of acquittal on the same counts, and the court denied the motion. In closing arguments, Shoemaker insisted that he did not know Chief Behning was next to the police vehicle before he collided with it. But he did not contest the serious-injury-by-vehicle or eluding charges, instead admitting to them. He also admitted that he "specifically intended to commit a theft."

The jury found Shoemaker guilty of four of the counts: attempted murder, eluding or attempting to elude while participating in a felony or resulting in bodily injury, willful injury resulting in serious injury, and first-degree robbery; they

---

[3] State's Exhibits 3, 4, 5, 9, 10A, and 11A captured Shoemaker's actions from the time he was at Katie's home damaging vehicles through fleeing in the garbage truck and eventually speaking with officers after hitting Chief Behning's vehicle. Defendant's exhibits A, B, and C show substantially the same.

acquitted Shoemaker of serious injury by vehicle. The jury also found that Chief Behning was a peace officer, and thus the sentencing requirements of Iowa Code section 707.11(5) applied.[4] In total, the court sentenced Shoemaker to a total term of imprisonment not to exceed fifty-eight years. Our court affirmed the convictions for attempted murder, willful injury causing serious injury, and first-degree robbery on direct appeal. *Shoemaker*, 2019 WL 5067177, at *5 Shoemaker applied for further review, our supreme court denied the application, and procedendo issued in December 2019.

Shoemaker filed this PCR application in February 2020, alleging ineffective assistance of trial counsel. The PCR court held a hearing in September 2022. At the hearing, Shoemaker's trial counsel testified that he "didn't file a motion [for change of venue] because I didn't think it would be successful." He opined "we were able to get a fair and impartial jury." He submitted exhibits of eleven news articles—seven published nine months before and four published after trial began. As to the other strategic decisions involved in the case, trial counsel detailed specific reasons addressing Shoemaker's complaints about his representation. First, he believed that evidence of Shoemaker's prior theft conviction was admissible, so he did not challenge its admission. Trial counsel explained that he did not challenge the admission of evidence related to the charges for which Shoemaker pled guilty because they "were ultimately related. It was essentially one long incident." He further said that they were "all one large transaction." He

---

[4] "If the fact finder determines the attempt to commit murder was against a peace officer . . . , the person shall serve one hundred percent of the term of confinement imposed and shall be denied parole, work release, or other early release." Iowa Code § 707.11(5)(c).

explained that he argued at trial that Shoemaker was guilty of third-degree robbery and asked the jury to find him guilty of that crime because "intent to criminally deprive with respect to a stolen vehicle to escape from police can be the basis or can be found from the way they're operating the vehicle." He did not move for a judgment of acquittal or request a jury instruction defining theft as opposed to operating a vehicle without the owner's consent for the same reason. Lastly, trial counsel testified that he did not rely on the intoxication defense or find an expert to testify on its applicability because it "wouldn't be applicable. . . . It was very apparent from factual circumstances of the case that [Shoemaker] was able to form specific intent for a bunch of things. He was making conscious choices."

The PCR court denied the application in December, finding that trial counsel's strategy during trial was largely "centered on limiting the witnesses the State presented and narrowing the jury's focus to intent rather than the egregious conduct by Shoemaker." In reviewing trial counsel's strategy, the PCR court concluded that "[t]he record during the trial and the record made during the PCR trial do not provide sufficient evidence that [trial counsel] should have moved for a change of venue based on pretrial publicity." Then, the PCR court found that it was not a breach of duty to fail to prevent the jury from hearing evidence of other crimes, wrongs, or acts because that evidence was most likely admissible as it was inextricably linked with other admissible evidence and also likely admissible as evidence of intent. The PCR court also found that it was a reasonable trial strategy to admit to theft "hoping the jury might take [Shoemaker] at [his] word and bypass any greater offense presuming [he has] accepted responsibility for [his] actions." Lastly, the PCR court determined that it would have been inconsistent to

argue the defense of intoxication as to the charges that Shoemaker pled not guilty to but not for the charges for which he pled guilty and that the evidence did not support submission of a diminished responsibility defense. Shoemaker appeals.

**II. Standard of Review.**

We review ineffective-assistance-of-trial-counsel claims de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021); *Hernandez Ruiz v. State*, 912 N.W.2d 435, 439 (Iowa 2018) ("[W]e do so . . . because such claims are constitutional in nature.").

**III. Analysis.**

Shoemaker alleges that his trial counsel was ineffective in four respects (1) failing to move for a change of venue; (2) failing to limit evidence of other crimes, wrongs, or acts; (3) admitting to theft, failing to move for judgment of acquittal on the first-degree-robbery count, and failing to submit jury instructions on theft versus operating vehicle without owner's consent; and (4) failing to present a defense of diminished capacity and intoxication.

"[T]o succeed on an ineffective-assistance claim, a PCR applicant must establish that counsel breached a duty and prejudice resulted, and the claim fails if either element is lacking." *Lusk v. State*, No. 18-1125, 2019 WL 1953461, at *1 (Iowa Ct. App. May 1, 2019) (citing *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012)); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Both elements must be proven by a preponderance of the evidence." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

Regarding the performance prong, we presume that counsel acted competently; that presumption is overcome if we find counsel's performance falls

below the normal range of competency. *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018). In looking at the normal range of competency, "claims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney guaranteed a defendant under the Sixth Amendment." *Ledezma*, 626 N.W.2d at 143. "[S]trategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' [but] strategic decisions made after a 'less than complete investigation' must be based on reasonable professional judgments which support the particular level of investigation conducted." *Id.* (citation omitted). "[W]e require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently." *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984).

Regarding the prejudice prong, "an applicant must meet 'the burden of showing that the decision reached would reasonably likely have been different absent the errors.'" *Ledezma*, 626 N.W.2d at 143–44 (quoting *Strickland*, 466 U.S. at 696). In other words, the applicant must show "the reasonable probability of a different verdict, or that the fact finder would have possessed reasonable doubt." *Id.* at 144. This showing must be "sufficient to undermine confidence in the outcome." *Bowman v. State*, 710 N.W.2d 200, 206 (Iowa 2006) (citation omitted).

**A. Change of Venue.**

First, Shoemaker argues that the publicity of this case was so extensive and inflammatory that prejudice to him must be presumed or there was actual prejudice

on the part of the jury.[5]  When "such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county," the court must either order that trial be transferred to or that the jury be impaneled in and transferred from another county.  Iowa R. Crim. P. 2.11(10)(b) (2018).  A party may establish this level of prejudice by demonstrating that either "(1) publicity attending the trial that is so pervasive and inflammatory that prejudice must be presumed, or (2) actual prejudice on the part of the jury."  *State v. Siemer*, 454 N.W.2d 857, 860 (Iowa 1990).

In looking at the publicity, we examine "the nature, tone, and accuracy of the articles; their timing in relation to the trial; and the impact of the publicity on the jurors as revealed through voir dire."  *Id.*  At the same time, "mere exposure to news accounts will not create a presumption of prejudice."  *Id.* at 861.  In *Siemer*, where none of the publicity indicated that the defendant was guilty and "[t]he press reports consisted largely of facts which were ultimately introduced at trial," our supreme court concluded prejudice could not be presumed.  *Id.*  Similarly, when there was no evidence of actual prejudice resulting from media coverage, we have found that trial counsel breached no duty and was not ineffective for failing to move for a change of venue.  *See Borushaski v. State*, No. 01-1683, 2003 WL 183284, at *2 (Iowa Ct. App. Jan. 29, 2003).

---

[5] Shoemaker also raised a concern that venue should have been changed because Chief Behning's dad was the bailiff supervisor for the Scott County Courthouse at the time of trial, but in the jury selection interviews we find no basis to address this concern and so we do not address it.

Here, Shoemaker has failed to demonstrate the level of prejudice in the jury that would have made a change of venue necessary; thus, counsel did not breach an essential duty in failing to raise the issue. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015) ("[W]here a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless.") During voir dire, the trial court heard from several jurors about their knowledge of the facts and of potential witnesses and did release some with possible preconceived bias. As to those identified by Shoemaker here, those jurors agreed that they would listen to the evidence as it came in, would be impartial, and would follow the law as instructed by the judge. Although C.G. had seen Chief Behning's injury in person, evidence of his injury was admitted at trial in both video and photographs; thus, she would have had the same awareness of the extent of his injuries at the end of the trial even without her prior knowledge. And the news coverage contained facts that were both introduced at trial and, in part, admitted to by Shoemaker; the coverage was also from nine months prior to trial or after the jury was already empaneled. Thus, trial counsel did not breach an essential duty by not moving for a change of venue, which ends our analysis on this claim.

**B. Evidence of Other Crimes, Wrongs, or Acts.**

Next, Shoemaker asserts that trial counsel was ineffective for failing to object to testimony about the crimes to which Shoemaker had already pled guilty specifically counts involving his theft of the red Dodge Ram Shoemaker was driving until he stole the garbage truck, damage he inflicted on other property, and his actions towards Katie. Trial counsel moved in limine to exclude much of this

evidence. But trial counsel and the prosecutor entered into an agreement about what could be discussed. Part of Shoemaker's criminal spree occurred on September 24 and then ended on September 25. So, trial counsel believed most of the testimony and evidence developed at trial was likely admissible under the inextricably-linked doctrine, as "other crimes, wrongs, or acts evidence that is inextricably intertwined with the crime charged is not extrinsic evidence but, rather, intrinsic evidence that is inseparable from the crime charged." *State v. Nelson*, 791 N.W.2d 414, 420 (Iowa 2010). That inextricably-linked evidence is admissible "based on a special relationship between this evidence and the charged crime" and because it provides the jury with context for the charged crime and is not subject to the prohibition of such evidence in Iowa Rule of Evidence 5.404(b). *Id.* at 420–21. Put another way, Iowa courts may "allow such evidence to complete the story of what happened when the other crimes, wrongs, or acts evidence is so closely related in time and place and so intimately connected to the crime charged that it forms a continuous transaction." *Id.*; *see also State v. Harrington*, No. 11-0646, 2013 WL 1749911, at *2 (Iowa Ct. App. Apr. 24, 2013) (finding evidence from a few hours earlier than the charged crimes was admissible because it "formed a continuous transaction").

As the State argued in its brief, "[s]evering any discussion of the prior counts would have required the State to present an eye-opening tale—that on September 25 after simply observing Shoemaker's vehicle, Davenport police disregarded their policy of non-pursuit to chase Shoemaker at high speeds for an undisclosed reason." Evidence of Shoemaker's ramming the stolen Dodge Ram into vehicles along with his threats towards Katie provided the jury with context for

why law enforcement was pursuing him and why his ramming the garbage truck into the service vehicle was not an accident. Trial counsel limited testimony knowing the other evidence of Shoemaker's actions was most likely admissible and he would have had limited success in objecting to it. "Counsel is not required to make meritless objections." *Kirkland v. State*, No. 16-0642, 2017 WL 4049321, at *4 (Iowa Ct. App. Sept. 13, 2017).

And under trial counsel's strategy, some of the otherwise admissible evidence was not presented to the jury pursuant to agreement with the State to minimize the full extent of Shoemaker's crime spree. The PCR court saw this same tension and the benefit of trial counsel's strategy:

> [Trial counsel] and Shoemaker were between a rock and a hard place when it came to the State's case. Either they contest all the charges and allow the State to present their case in its entirety, or they plead guilty to some offenses and attempt to limit the State's presentation through agreement. If [trial counsel] and Shoemaker had chosen to contest all of the charges, their defense centered on intent would have likely been lost on the jury as they listened to Shoemaker's crime spree. That said, by employing the strategy that they did, and acknowledging wrongdoing, there was hope that the jury's focus could turn to the issue of intent and mitigate some of the damage. Simply because this tactic did not succeed does not make it a poor strategy given the facts of this case.

Thus, Shoemaker has failed to demonstrate the breach of duty necessary for ineffective assistance on this claim.

## C. Theft Admission.

As the PCR court noted, Shoemaker and his trial counsel made a strategic decision to admit to third-degree robbery at trial "to direct the jury to a lesser-included offense" under the charge of first-degree robbery. That meant Shoemaker admitted he committed a theft of the garbage truck. But Shoemaker

now claims that his trial counsel should not have counseled him to admit to a theft. Instead, he argues trial counsel should have both moved for a judgment of acquittal on the robbery charge and submitted jury instructions on theft and on operating vehicle without owner's consent. Shoemaker maintains the State could not show he took the garbage truck with the intent to permanently deprive the owner of the vehicle, urging he simply took it without the owner's consent, an offense separate and distinct from a theft.

As for the duty to move for judgment of acquittal to challenge the sufficiency of the evidence before the district court submits a criminal case to the jury, to do so here would have been unsuccessful. *See* Iowa R. Crim. P. 2.19(8)(a); *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). First, the evidence of a theft with intent to deprive the owner of the vehicle was overwhelming. Shoemaker drove erratically, avoided spike strips by driving off of the road, and—as the investigator testified—made no evasive maneuvers before slamming into the police vehicle. The reckless operation of a get-away vehicle can satisfy the intent element of theft.

In *State v. Miller*, under similar facts, we found substantial evidence to support a charge of theft rather than operating a vehicle without owner's consent. No. 16-2110, 2018 WL 1099580, at *6–7 (Iowa Ct. App. Feb. 21, 2018) (requiring an examination of the record for facts and circumstances supporting the inference that the defendant intended to permanently deprive the owners of the trucks). *Compare* Iowa Code § 714.1(1) (theft), *with id.* § 714.7 (operating vehicle without owner's consent). We so held because Miller had committed other crimes prior to stealing the vehicle, "took [the] vehicle in the owner's physical presence and against his obvious wishes," and "fled on foot and seized a second getaway

vehicle" after crashing the first. *Miller*, 2018 WL 1099580, at \*5. And, ultimately, because Miller "disposed of the [vehicle] in a manner that made it unlikely [its] owner[] would recover [it] with any remaining economic value" we concluded that a jury could have found that he had intent to permanently deprive the owner of the vehicle. *Id.* at \*7. Thus, the trial court would not have granted a judgment on acquittal under these facts. Intent to commit a theft is also part of a robbery charge. *See* Iowa Code § 711.1(1). Because trial counsel was unlikely to succeed on a motion for judgment of acquittal on the robbery charge as there was evidence of intent to commit a theft, it was not deficient performance to fail to do so.

Similarly, admitting to elements of lesser charges to limit the likelihood that the jury would find a defendant guilty of the original charges and to build credibility with the jury is a legitimate trial strategy. *See, e.g.*, *Pettes v. State*, 418 N.W.2d 53, 56 (Iowa 1988); *Brown v. State*, No. 14-1646, 2016 WL 351459, at \*4–5, \*9–10 (finding no breach of duty despite counsel stating that the defendant was guilty during opening statements and a bad man and guilty of a couple of crimes during closing statements because doing so was a trial strategy that fell within normal competency). Trial counsel explained that as part of the trial strategy developed with Shoemaker, Shoemaker agreed to plead guilty to the theft of the garbage truck to bolster Shoemaker's credibility. The goal was for Shoemaker to gain credibility so that the jury would give more credence to his assertion he had no intent to attempt to cause a death or serious injury. This is a strategy that falls within the normal range of competency. *See Krogmann*, 914 N.W.2d at 306. Under these facts, we find this strategy to be reasonable. *See Brown*, 2016 WL 351459, at \*9–10. There was no breach of duty of trial counsel on this theory.

Finally, regarding Shoemaker's robbery charge and his claim involving jury instructions, trial counsel was not required to submit jury instructions for theft as it is not a lesser-included charge of robbery. *See McCullough v. State*, No. 12-1028, 2013 WL 5760582, at *2 (Iowa Ct. App. Oct. 23, 2013) ("Theft is not a lesser-included offense of robbery, since theft requires an element of taking, an element not needed to constitute robbery."). The same is true for an instruction on operating vehicle without owner's consent. *Id.* ("[W]hile operating without the owner's consent is a lesser-included offense of theft, it is not a lesser-included offense of robbery. . . . A theft instruction was not given to the jury. Consequently, [the defendant] was not entitled to a[n] operating without owner's consent instruction."). Therefore, we find Shoemaker failed to establish trial counsel breached a duty; this claim fails.

**D. Intoxication Defense.**

Lastly, Shoemaker asserts that his trial counsel should have investigated a defense of diminished responsibility or intoxication which, in his opinion, would have required hiring an expert.. *See* Iowa Code § 701.5 (defining the intoxication defense); *State v. Collins*, 305 N.W.2d 434, 436 (Iowa 1981) (defining the diminished responsibility defense as "where an accused, because of a limited capacity to think, is unable to form a necessary criminal intent"). And at the PCR trial, Shoemaker called a witness, Dr. James O'Donnell, a pharmacology and toxicology expert. But O'Donnell only read Shoemaker's testimony from the trial, never interviewed him, and did not view the video evidence of the events, so he did not have a basis to dispute trial counsel's opinion of the specific intent Shoemaker exhibited during the video footage. O'Donnell conceded that

Shoemaker's actions evidenced his specific intent to steal the vehicles and try and escape, albeit with the goal of seeking more methamphetamine. And to that point, O'Donnell was unable to dispute trial counsel's observations of Shoemaker's intentional conduct revealed in the law enforcement videos. Thus, Shoemaker failed to demonstrate how an earlier investigation by a different expert might have led to the submission of either of these defenses at trial.

Even so, to prevail under an intoxication defense, a defendant must demonstrate that they were "incapable of formulating or possessing the specific intent to commit the crime." *State v. Guerrero Cordero*, 861 N.W.2d 253, 261 (Iowa 2015), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). "[D]iminished responsibility may be offered as a defense where an accused, because of a limited capacity to think, is unable to form a necessary criminal intent." *Collins,* 305 N.W.2d at 436. They are not defenses to general intent crimes. *Guerrero Cordero*, 861 N.W.2d at 259. "[I]ntent required by the statute 'may be inferred from the defendant's actions and circumstances of the transaction . . . .'" *State v. Keeton,* 710 N.W.2d 531, 534 (Iowa 2006) (quoting 21 Am. Jur. 2d *Criminal Law* § 128, at 214-15 (1998)). Shoemaker's trial counsel was not required to assert meritless defenses. *See State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013); *Powell v. State*, No. 18-0542, 2019 WL 2524264, at *3 (Iowa Ct. App. June 19, 2019). The PCR court noted that trial counsel explored these defenses with Shoemaker, but counsel felt the evidence of Shoemaker's intent precluded their use. Recognizing Shoemaker's judgment might have been impaired, trial counsel explained why he did not pursue the intoxication defense:

> The intoxication defense wouldn't be applicable. Intoxication is only a defense if it prevents someone from being capable of forming a specific intent to commit a crime. It was very apparent from factual circumstances of the case that Mr. Shoemaker was able to form specific intent for a bunch of things. He was making conscious choices.

At trial, video evidence supported Shoemaker's ability to complete his crime spree, even maneuvering the large garbage truck around vehicles and spike strips. Likewise, Shoemaker admitted to having the intent to commit a theft and the intent to elude law enforcement. Furthermore, threatening the garbage truck driver and driving the garbage truck towards Chief Behning without applying its brakes also demonstrated specific intent to cause harm. *See Shoemaker*, 2019 WL 5067177 at *3; *see also Troupe v. State*, No. 15-0678, 2016 WL 1681728, at *3 (Iowa Ct. App. Apr. 27, 2016) (finding testimony at trial did not support intoxication defense given the intent that could be inferred from defendant's actions). Finding no legal justification for the assertion of either diminished responsibility or intoxication defenses, Shoemaker's trial counsel was not ineffective for failing to try to assert those at trial.

**IV. Conclusion.**

Shoemaker did not meet his burden to prove a breach of duty and prejudice. Because we find that trial counsel was not required to bring meritless motions for a change of venue or judgment of acquittal, object to evidence that was inextricably linked with other admissible evidence, or to jury instructions not supported by caselaw, we affirm the PCR court's denial of these ineffective-assistance-of-trial-counsel claims.

**AFFIRMED.**