# IN THE COURT OF APPEALS OF IOWA

No. 21-0895
Filed August 31, 2022


**STATE OF IOWA,**
         Plaintiff-Appellee,

**vs.**

**RIKI ELLEN HARRINGTON,**
         Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.


        Riki Harrington appeals her convictions and sentences for ongoing criminal

conduct and first-degree theft.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Bradley M. Bender,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


        Considered by Ahlers, P.J., Chicchelly, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**DOYLE, Senior Judge.**

A jury found Riki Harrington guilty of ongoing criminal conduct and first-degree theft. Harrington's convictions stem from the theft of $18,999 in payments made to the clerk for the City of Buffalo between November 2016 and August 2018.

Harrington first challenges the sufficiency of the evidence supporting her convictions. We review her claim for correction of errors at law. *See State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). The question is whether the evidence "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *See id.* (citation omitted). In making this determination, we view the evidence, as well as all reasonable inferences that can be drawn from it, in the light most favorable to upholding the verdict. *See id.*

City clerk Tanna Leonard hired Harrington as a deputy clerk in April 2015, and the two were the only people who worked in the city clerk's office during the relevant period. The clerk's office takes in money paid to the city for utility bills, fines, rental fees, and other items. Harrington's role was to receive payments at the front window of the clerk's office. Payments were made by cash, check, and credit card. Harrington generated a daily report of the total payments received. In addition, she would make a deposit slip for the bank and deposit the funds in the bank. Occasionally, Leonard would perform these tasks.

There is no dispute that $18,999 went missing from the city clerk's office. The evidence shows that on occasion some checks the clerk's office received were omitted from the city's daily receipt report but deposited into its bank account. When this happened, cash received by the office in an amount equaling the omitted check or checks was listed in the daily report but was not deposited into

the bank account. Put another way, the amount of the checks that were received and deposited (but not recorded in the daily report) matched the amount of cash that was received and recorded but not deposited. As a result, the amounts in the daily reports matched the amounts of the deposits while a total of $18,999 cash went missing.

The only question is whether there is substantial evidence that Harrington is the person who took it. We conclude there is. In her role as deputy clerk, Harrington was responsible for generating the daily reports that included the total amount of payments the office accepted each day. She prepared the bank deposit slips. And she was typically the person who deposited that money in the bank.[1] Harrington emphasizes that "[t]here was no direct evidence presented, either by eyewitness or video recording, to show that Harrington took the cash." True, but that inference is clear from the evidence. Only two people worked in the clerk's office. When Leonard suspected something was amiss, she discovered that unreported checks had been deposited in the city's account. Leonard reported her findings to the mayor. An audit by the State Auditor's Office followed. The auditor testified to the incidents found where a check that had not been receipted into the city's system was deposited and a like amount of cash was receipted but not deposited. As the person who received and recorded the funds for the clerk's office, Harrington should have discovered and reported any discrepancies; she failed to do so. Her position also provided the ability to omit certain amounts from the daily log and the bank deposits. The circumstances point to Harrington taking

---

[1] Leonard also deposited the funds at times.

the missing cash. Circumstantial evidence is just as compelling as direct evidence. *State v. O'Connell*, 275 N.W.2d 197, 205 (Iowa 1979). A jury verdict of guilty may be supported by circumstantial evidence alone. *State v. Moses*, 320 N.W.2d 581, 586 (Iowa 1982). The evidence shows the office is missing a total of $18,999. And viewing all the evidence in the light most favorable to upholding the verdict, a rational person could find beyond a reasonable doubt that Harrington took it. Because substantial evidence supports Harrington's convictions, we affirm.

Harrington also challenges the sentences imposed by the district court. We review sentences for corrections of errors at law. *See State v. Wilbourn*, 974 N.W.2d 58, 65 (Iowa 2022). When a sentence falls within the statutory limits, we will uphold it unless the court abused its discretion or considered an inappropriate matter. *See id.* If the sentence is not mandatory, the court must exercise its discretion. *State v. Moore*, 936 N.W.2d 436, 439 (Iowa 2019). Failure to do so results in a defective sentencing procedure, and we must vacate the sentence and remand for resentencing. *State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999).

Harrington contends the court abused its discretion in sentencing by refusing to grant her a deferred judgment. She claims the court adhered to a fixed sentencing policy of denying deferred judgment from crimes that violate the public trust. Doing so "is the exact antithesis of discretion." *State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979) (citation omitted).

In imposing sentence, the court noted Harrington's lack of criminal history and the nonviolent nature of the crime and found both weighed heavily in Harrington's favor. The court then observed that her crimes violated the public trust:

> But it was an ongoing, continuous theft and violation of her trust as a public employee and her trust as a member of the community that went on over a period of years. I mean, it is disclosed in the charges against her as not only theft but ongoing criminal conduct, and the Court considers that to be a very serious matter.
>
> The maintenance of the public trust by our public employees is of the highest regard and needs to be taken into consideration when that public trust is violated.

Just after noting that Harrington had violated the public trust, the court rejected incarceration as an option, finding it "clear" that its choice was between probation and deferred judgment. The court found that Harrington's ability to obtain employment considering the negative publicity she had received was "commendable" and weighed in her favor. But the court noted that the consequences of Harrington's actions were self-inflicted because she "intentionally, knowingly, consciously, and repeatedly over a period of time stole money from the residents of the community that she was required to serve." It then summarized its reasoning and concluded that probation was the best sentencing option for Harrington:

> For all of those reasons and also particularly because in this case, where this is this kind of public violation of the public trust, the Court believes that future employers deserve to know what happened here, and that will not happen if a deferred judgment is granted. It will happen if there is probation.
>
> Probation is not something that the Defendant cannot come back from, but it's going to be a long, hazardous road, and that may be fair, and I believe it is fair and appropriate under the circumstances of this case.
>
> For those reasons, the Defendant's request for a deferred judgment is denied.

The record shows that the sentencing court exercised its discretion in denying Harrington deferred judgment. Although the court gave the most weight to the nature of Harrington's crimes, it was not the only factor it considered in

reaching its decision.  The sentencing court considered the individual facts before it in crafting a sentence that it believed would achieve the goals of sentencing. Because the court exercised its discretion properly, we affirm her sentences.

**AFFIRMED.**